UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRIAN LEE MOREAU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 3:17-CV-366-MGG |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Brian Lee Moreau ("Moreau") filed his complaint in this Court seeking judicial review of the Social Security Commissioner's final decision to deny his applications for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This Court may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). For the reasons discussed below, this Court **AFFIRMS** the Commissioner's final decision.

**I.    PROCEDURE**

On October 30, 2013, Moreau filed applications for DIB and SSI, pursuant to 42 U.S.C. § 423 alleging disability beginning January 27, 2011.[1] After Moreau's claims were initially denied on January 21, 2014, and again on reconsideration on April 8, 2014,

---

[1] Regulations governing applications for DIB and SSI are almost identical and found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Therefore, this order will only refer to 20 C.F.R. § 404 for efficiency.

Moreau amended his alleged onset date to July 20, 2012. On February 18, 2016, a hearing was held before an administrative law judge ("ALJ"). On March 30, 2016, the ALJ issued his decision denying Moreau's applications for DIB and SSI having found that he was not disabled as defined by the Social Security Act. On March 10, 2017, the Appeals Council denied Moreau's request for review, making the ALJ's decision the final decision of the Commissioner.

On May 12, 2017, Moreau filed a complaint in this Court seeking judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). On September 5, 2017, Moreau filed his opening brief. Thereafter, on November 21, 2017, the Commissioner filed a responsive memorandum asking the Court to affirm the decision denying Moreau's benefits. Moreau filed his reply brief on December 5, 2017.

## II.    RELEVANT BACKGROUND

Moreau was 43 years old on the amended alleged onset date. Moreau sought DIB and SSI based on back pain, high blood pressure, depression, anxiety, fatigue, and possible arthritis. Moreau reports completing the ninth grade and did not earn a GED. He worked as an appliance salesman and tire replacement technician but testified that he had to stop working due to pain and his wife's illness.

At the hearing before the ALJ, Moreau testified that he suffered from back pain, headaches, neck pain, and sharp pain in his buttocks into his right leg. Moreau further testified that his pain only allows him to stand and wash dishes for about five to ten minutes, walk approximately one hundred feet, sit about twenty minutes before having to stand, and lift no more than ten pounds. Furthermore, he testified that his mind races

2

constantly and he has trouble concentrating. Moreau also stated that he does not always take care of his personal care needs because he does not feel like it as a result of his psychological conditions.[2]

After the hearing, the ALJ issued a written decision reflecting the following findings based on the five-step disability evaluation prescribed in the Social Security Administration's regulations.[3] At step one, the ALJ found that Moreau had not engaged in substantial gainful activity since July 20, 2012, the amended alleged onset date. At step two, the ALJ found that Moreau had the following severe impairments: major depressive disorder; cannabis abuse disorder, sustained full remission; cocaine use, moderate, sustained full remission; morbid obesity; obstructive sleep apnea/COPD; anxiety disorder; GERD; history of fracture of T11 vertebra; and lumbar spondylolisthesis. However, at step three, the ALJ found that Moreau's physical and mental impairments did not meet or medically equal a Listing in 20 C.F.R. § 404, Subpart P, Appendix 1. Specifically, the ALJ notes the criteria of Listings 1.02 (Disorders of the spine), 3.02 (COPD), 3.10 (Sleep-related breathing disorder), and 9.00 et seq. (Endocrine disorders) were not met. Furthermore, the ALJ notes Moreau's mental impairments, under the criteria of Listings 12.04, 12.06, and 12.09, fail to satisfy

---

[2] Moreau also testified that he has been unable to control his blood sugars, which causes fatigue and weakness. The Court need not address this impairment and its related symptoms, because it was recently diagnosed and does not satisfy the 12-month durational requirement necessary to constitute a severe medically determinable impairment. *See* 20 C.F.R. § 404.1509. It is unclear in the ALJ's opinion if he considered this condition in the RFC as a non-severe impairment. However neither of the parties are contesting his handling of the condition and this Court will refrain from doing so as well.

[3] *See* 20 C.F.R. § 404.1520. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001); *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

3

"paragraph B" criteria because there was only a mild restriction in activities of daily living and moderate difficulties in social functioning and concentration, persistence, or pace with no episodes of decompensation. Furthermore, the ALJ notes that the evidence fails to satisfy "paragraph C" criteria.

Before proceeding to step four, the ALJ determined Moreau's residual functional capacity ("RFC"). The ALJ concluded that Moreau had the ability to perform light work with some limitations. The ALJ found Moreau's abilities and limitations as follows:

> [Moreau] can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He can have no more than occasional exposure to irritants, such as fumes, odors, dusts, gases, and poorly ventilated areas. He can have no exposure to excessive vibration. He can have no use of moving or dangerous machinery or exposure to unprotected heights. He is capable of work that consists of simple, routine, and repetitive tasks, but not at a production rate pace. He is limited to no more than occasional interaction with the public, coworkers, and supervisors.

[DE 8 at 30]. At step four, the ALJ found that the aforementioned limitations prevented Moreau from performing any of his past relevant work. At step five, however, the ALJ considered Moreau's age, education, work experience, and RFC and determined that Moreau was able to perform a significant number of jobs in the national economy, including encapsulator, agricultural produce sorter, and wireworker.

Based on these findings, the ALJ determined that Moreau had not been under a disability as defined by the Social Security Act from July 20, 2012. Moreau requested that the Appeals Council review the ALJ's decision. On March 10, 2017, the Appeals Council denied review of the ALJ's decision, making it the Commissioner's final decision. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005); 20 C.F.R. § 404.981.

4

## III. ANALYSIS

### A. Standard of Review

On judicial review, the Social Security Act requires that the Court accept the Commissioner's factual findings as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). The ALJ must build a logical bridge from the evidence to his conclusion and a reviewing court is not to substitute its own opinion for that of the ALJ, or to re-weigh the evidence. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

Minimally, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2005). However, the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). The ALJ must provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001).

### B. Issues for Review

Moreau seeks reversal and remand of the ALJ's decision arguing that the ALJ's RFC determination was not supported by substantial evidence. Specifically, Moreau contends that the ALJ erred by failing to request a consultative examination under 20 C.F.R. § 404.1519(a). In support, Moreau argues that the current severity of his spinal impairments was unknown at the time the ALJ was determining whether he was disabled. Thus, without a consultative examination the ALJ could not properly consider his limitations due to his alleged spinal impairments. Moreau also contends that the ALJ's mental RFC determination was not supported by substantial evidence because he failed to give Moreau's treating psychologist's opinion controlling weight without articulating substantial evidence to support his decision. The Commissioner, however, opposes both arguments.

### 1. No consultative examination was required.

Moreau's primary argument is that the ALJ erred by failing to request a consultative examination before making a disability determination. Specifically, Moreau contends that there were no opinions in the record concerning Plaintiff's physical limitations caused by his spinal impairments. Therefore, Moreau argues that the ALJ was required to order a consultative examination to make an informed decision. The Commissioner, however, contends that there was substantial evidence to support the ALJ's RFC finding.

With respect to the record before the ALJ, the claimant retains the responsibility to provide medical evidence showing how his impairments affect his functioning. 20 C.F.R. § 404.1512; *Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir. 1991). The record may include medical signs, diagnostic findings, the claimant's statements about the severity and limitations of symptoms, statements and other information provided by treating or examining physicians and psychologists, third party witness reports, and any other relevant evidence. SSR 96-7p. Therefore, when the record does not support specific physical or mental limitations or restrictions on a claimant's work related activity, the ALJ must find that the claimant has no related functional limitations. SSR 96-8p. When the evidence is insufficient to support a decision because the severity of an impairment is unknown, the ALJ has the option of ordering a consultative examination. 20 C.F.R. § 404.1519(a); *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011). Deference should be given to an ALJ's decision about how much evidence is sufficient to develop the record fully and what measures, including additional consultative examinations, are needed in order to accomplish that goal. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009).

7

Here, Moreau relies on *Terry v. Astrue*, 580 F.3d 471 (7th Cir. 2009), to support his contention that a consultative exam was required. Moreau argues that *Terry* establishes that an ALJ's determination cannot be based on substantial evidence when there is no opinion evidence in the record to support it. In that case, the ALJ was required to order a consultative examination to adequately develop the record because there was no evidence in the record that supported the conclusion that the claimant could perform sedentary work. *Id.* at 476. However, the record before the ALJ in this case can be distinguished from the record in *Terry*. Indeed, in this case, the ALJ cited evidence in the record, as well as Moreau's own testimony about his symptoms and lifestyle, in support of his conclusions about Moreau's physical limitations.

For instance, the ALJ began his physical RFC analysis by explicitly identifying Moreau's physical impairments and comparing Moreau's contradictory testimony to the record evidence. The ALJ found Moreau's testimony that he cannot do "'physical' things due to pain," inconsistent with his stated ability to care for himself and his daughter, perform household chores, and go grocery shopping. [DE 8 at 31]. Additionally, the ALJ noted that Moreau has not had back surgery for his back pain and there are no medical treatment records addressing the alleged pain in the joints of his hands and shoulders.

The ALJ continued his analysis by citing treatment notes from Moreau's primary care physician, John Rogers, M.D.; his pain management doctor, Chetan Puranik, M.D.; and Moreau's most recent visit with Dr. Reddy, M.D. at South Bend Orthopedics. The

8

ALJ's decision reflects these treating physicians' reports of Moreau's physical conditions and opinions regarding his limitations.

For example, the ALJ accepted Moreau's testimony that he had experienced pain since his amended alleged onset date, but then cited to Dr. Rogers' treatment note dated July 8, 2013, reporting Moreau's statement that he was suffering only slight impairment of his activities due to pain and that he was taking care of his mother who just had eye surgery. The ALJ also cited to additional treatment notes from Dr. Rogers showing a normal gait during a November 3, 2014, visit and a normal MRI of the thoracic spine on November 29, 2014, despite Moreau's continuing complaints of pain.

The ALJ also relied upon treatment records from Dr. Puranik who Moreau began treating with in March 2015 for pain management. In particular, the ALJ cites an office visit on April 18, 2015, after Moreau completed physical therapy, where Moreau rated his pain at only a 2 out of 10 and said his medication was helping with the pain. The ALJ also references a treatment note dated June 25, 2015, where Dr. Puranik estimated that Moreau he had at least 75 to 80% pain relief after continuing to undergo physical therapy, a diagnostic thoracic medial branch nerve block, and radio frequency ablation.

The ALJ then noted that shortly thereafter in August 2015, having received injections, Moreau indicated to Dr. Rogers that the injections were helping and that his pain management treatment was improving his symptoms and functional abilities. Moreover, the ALJ cited Moreau's November 2015 statement to Dr. Rogers that he "had some improvement with pain management treatment and therapy" and Dr. Rogers' report that same day that Moreau's weight was down to 264 pounds due to increased

9

activity presumably to show that his pain treatment seemed to have been working. [DE 8 at 33].

Additionally, the ALJ referenced Moreau's most recent treatment for his back pain with Dr. Deepak Reddy, M.D. at South Bend Orthopedics in January 2016. The ALJ cited Moreau's complaints of pain to Dr. Reddy as well as the results of x-rays in December 2016 and an MRI ordered by Dr. Reddy. Yet the ALJ also indicated that Dr. Reddy's examination of Moreau that day revealed a normal gait and normal range of motion of the lumbar spine with no muscle spasms or tenderness. The ALJ also noted that upon review of the MRI results, Dr. Reddy recommended non-operative treatment, such as physical therapy or medications, to deal with Moreau's mild lumbar spondylosis with facet arthrosis, mild discogenic disease, and L5-S1 level mild broad-based bulge.

In light of this evidence cited in the ALJ's decision, this case is more analogous to *Poyck* than *Terry*. In *Poyck*, the ALJ denied a consultative examination because the record contained several mental and physical examination records. 414 F. App'x at 861. Similarly, here, as laid out above, the ALJ had substantial evidence regarding Moreau's physical impairments making it reasonable for the ALJ not to order an additional consultative physical examination. *See also Scheck v. Barnhart,* 357 F.3d 697, 702 (7th Cir. 2004) *(*indicating that no medical record is ever complete because "one may always obtain another medical examination, seek the views of one more consultant . . . and so on," yet the ALJ still needs to make a decision*)*.

Notably, Moreau also challenges the ALJ's reliance upon a physical consultative exam performed by Dr. Gupta, M.D. in December 2013. Before discussing Moreau's treatment with Dr. Rogers, Dr. Puranik, and Dr. Reddy, the ALJ reported Dr. Gupta's back-pain related findings that Moreau had a normal musculoskeletal exam with no tenderness in any region, full range of motion, and a normal gait with no difficulty with orthopedic maneuvers. Moreau alleges that the ALJ's reliance on those findings was improper because Dr. Gupta examined him two years before he underwent pain treatment including the radio frequency ablation in September 2015, suggesting his condition had significantly changed. Moreau's argument would be more persuasive if the ALJ had not cited so extensively to Dr. Rogers's, Dr. Puranik's, and Dr. Reddy's medical records to taking into account the pain treatment after Dr. Gupta's consultative examination before affirming Dr. Gupta's findings. Therefore, any error here is harmless.

Consequently, no consultative examination was required and the ALJ supported his physical RFC determination with substantial evidence.

### 2. The ALJ properly considered Dr. Allen's opinion.

Moreau's second and final argument is that the ALJ's mental RFC determination is not supported by substantial evidence because the ALJ failed to follow the treating physician rule by only partially accepting the opinion of his primary psychologist, Dr. Allen, Psy.D. Specifically, Moreau argues that the ALJ erred by only affording little weight to Dr. Allen's opinion concerning Moreau's mental capacity for work and by not

explaining what evidence he relied upon to determine that Dr. Allen's opined limitations were not warranted.

Generally, more weight is given to the opinion of a treating source because they are more familiar with a claimant's conditions and circumstances. *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003). The opinion will be given controlling weight if it is not inconsistent with the medical record as a whole. 20 C.F.R. § 404.1527(c)(2). The ALJ can reject an examining source's opinion only if his reasons are supported by substantial evidence. *Id.* When a treating source opinion is not given controlling weight, the ALJ must consider the length of treatment, nature and extent of the treatment relationship, supportability of the opinion, consistency with other evidence of record, and any other factors that support the opinion. 20 C.F.R. § 404.1527(c).

In the present case, Dr. Allen opined— through a mental capacity assessment— that Moreau has moderate limitations in the ability to understand, remember, and carry out simple instructions; marked limitation in the ability to maintain attention and concentration for extended periods; moderate limitation in the ability to make simple work-related decisions; marked limitation in the ability to respond appropriately to supervisors; extreme limitation in the ability to interact with the public and get along with coworkers; and marked limitation in the ability to respond appropriately to change. [DE 8 at 325–27]. The ALJ based his conclusion about Moreau's mental limitations on Dr. Allen's opinion finding that Moreau's mental impairments were severe and that he has "moderate" difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. Additionally, the ALJ gave only little

12

weight to the State agency psychological consultant's opinion that Moreau's mental impairments were non-severe and demonstrated only mild restrictions. The ALJ's reliance on Dr. Allen's assessment shows the ALJ's attention and consideration to Dr. Allen's recommendations. However, the ALJ ultimately concluded that Dr. Allen's opinion was only entitled "little weight" related to the RFC because the restrictive limitations were inconsistent with the other evidence in the record.

In support, the ALJ compared Dr. Allen's opinion to that of a psychological consultation examination performed by Joyce Scully, Psy.D. The ALJ noted that during Dr. Scully's December 2013 examination of Moreau, she assigned Moreau a GAF score of 55, which is consistent with moderate symptoms or functional limitations. The ALJ gave this determination great weight and explained that although this was a one time evaluation, the report was consistent with the record as a whole.

The ALJ showed further inconsistencies with Dr. Allen's opinion by citing a September 2014 report by Dr. Allen himself giving Moreau a GAF score of 52, which is consistent with the previous score of 55. The ALJ also noted that Dr. Allen had recommended behavioral therapy, which Moreau consistently did not attend. Further, the ALJ pointed to treatment records that demonstrated Dr. Allen reported improved GAF scores of 55 and 61 in October 2014 and December 2014 respectively despite not attending the therapy sessions. The ALJ cited other inconsistencies with Dr. Allen's opinion including therapy notes from late 2015 and early 2016 showing continued improvement and Dr. Rogers's report in August 2015 that Moreau felt as though Dr. Allen's sessions were helping him "quite a bit."

13

The ALJ also found Dr. Allen's opinion inconsistent with notes in the record about Moreau's improvements in his personal life. For example, the ALJ cited Moreau's own reports of reacquainting with high school friends in February 2015; experiencing decreased stress, better sleep, and mild depression in March and April 2015 while also talking to a woman online, exhibiting a brighter affect and a good mood, and doing household tasks like laundry, dishes, and other housework; making friends after moving into a new apartment in July 2015; and handling his daughter well despite her routinely acting out. Finally, the ALJ noted that Moreau's lack of inpatient care was also inconsistent with Dr. Allen's recommendation for restrictive limitations.

By citing to multiple pieces of objective evidence in the record, the ALJ effectively explains why he decided Dr. Allen's opinion was not entitled to controlling weight. Despite reaching this conclusion, however, the ALJ did not completely disregard Dr. Allen's opinion. In fact, the ALJ incorporated limitations of simple, routine, and repetitive tasks, but not at a production rate pace and no more than occasional interaction with the public, coworkers, and supervisors—consistent with Dr. Allen's opinion—into Moreau's RFC.

Therefore, the ALJ properly applied the treating physician rule. Accordingly, he supported his mental RFC determination with substantial evidence.

IV. **CONCLUSION**

For the above reasons, the Court concludes that the ALJ did not err in failing to order a physical consultative examination or in giving only little weight to the opinion of Moreau's treating psychologist, Dr. Allen. Therefore, the ALJ's RFC determination is

supported by substantial evidence. Accordingly, Moreau's motion for reverse or remand is **DENIED**. The Commissioner's decision is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this 26th day of July 2018.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge